IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| CHARLENE ARKANSAS, § | |
| § | |
| Plaintiff, § | |
| v. § | |
| § | Civil Action No. **3:18-CV-1481-L** |
| WILMINGTON TRUST NATIONAL § | |
| ASSOCIATION and WELLS FARGO § | |
| BANK, N.A., § | |
| § | |
| Defendants. § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendants' Motion to Dismiss (Doc. 10), filed April 30, 2019. After considering the motion, briefs, pleadings, and applicable law, the court **grants in part and denies in part** Defendants' Motion to Dismiss (Doc. 10).

### I. Factual and Procedural Background

Charlene Arkansas ("Plaintiff" or "Ms. Arkansas") originally filed this mortgage foreclosure action in state court on May 7, 2018, asserting common law tort claims under Texas law for fraud and negligent misrepresentation against Defendants Wilmington Trust National Association ("Wilmington")[1] and Wells Fargo Bank, N.A. ("Wells Fargo") (collectively, "Defendants"). She also seeks a declaratory judgment to avoid enforcement of the home equity loan and lien on her home. The action was removed to federal court by Defendants on June 8, 2018. On April 30, 2019, Wilmington moved to dismiss Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6).

---

[1]Although Plaintiff sued "Wilmington Trust National Association," Defendants note in their Motion to Dismiss that the correct name for this entity is "Wilmington Trust National Association, as Successor to Citibank, N.A., as Trustee for Bear Stearns Asset-Backed Securities Trust 2006-HE4 Asset-Backed Securities, Series 2006 HE4." Defs.' Mot. 6.

**Memorandum Opinion and Order – Page 1**

Ms. Arkansas brought the current action to obtain a stay of the expedited proceeding initiated by Defendants in state court on November 21, 2017, pursuant to Texas Rule of Civil Procedure 736, to foreclose on a November 25, 2005 home equity loan ("Loan") secured by Ms. Arkansas's real property ("Property") located at 6415 Lazy River Drive, Dallas, Texas 75241. She does not dispute the existence of the Loan but challenges its validity and enforceability as it pertains to her, contending that she is not responsible for payment of the Loan because she did not execute the Loan documents and believes that she is a victim of identity theft. Ms. Arkansas acknowledges that she made payments on the Loan but alleges that she stopped making payments after "she sought advice and realized her home had been paid off." Pl.'s Orig. Pet. 3. Ms. Arkansas alleges that she made the payments because "she was afraid of losing her home, she is elderly and unsophisticated, and did not have enough information to realize immediately that she had been a victim of identity theft." *Id.*

With respect to her fraud and negligent representation tort claims under Texas law, Ms. Arkansas alleges that "Defendants represented to [her] that they held a lien on her home by sending notices requesting payment for the alleged lien"; that "Defendants made the representation in the course of [their] businesses by sending regular notices regarding the alleged lien and accepting Plaintiff's payments"; that "Defendants' representation was a misstatement of fact [or false]" and made with the intention of having Plaintiff rely on the representation; that "Defendants did not use reasonable care in determining the validity of the alleged lien as successor to the original lien holder Ames Funding Corporation"; that Plaintiff justifiably relied on the representation when she made the Loan payments out of fear of losing her home; and that, as a direct and proximate result of the representation, Plaintiff suffered loss in the form of payments made on the Loan that she did not sign and was subjected to expedited foreclosure proceedings on her home. *Id.* at 4-5. For relief, Ms.

Arkansas requests that the court declare that no default exists in [her] obligations to [D]efendants . . . arising out of the alleged lien" on her home. In addition, she seeks to recover "all sums wrongfully paid to Defendants" on the lien, as well as attorney's fees and costs of suit. *Id.* at 7. Plaintiff also requests injunctive relief to prevent Defendants from foreclosing on the lien on her home.

Before the two related state cases were initiated by Plaintiff and Defendants, Ms. Arkansas sought relief under Chapter 13 of the Bankruptcy Code on November 4, 2013. On February 11, 2014, the bankruptcy court entered an order confirming her Chapter 13 Plan based on the value of her property and the trustee's recommendation regarding the handling of secured and unsecured claims, including the recommendation that Wells Fargo's secured claim, based on the Loan, be allowed. Defs.' App. 204-07 (Order Confirming Chapter 13 Plan, Valuing Collateral, Allowing Debtor's Attorney's Fees, Providing for a Trustee's Recommendation Concerning Claims, and Other Related Matters). On April 28, 2017, the plan was modified, and an order approving the modified plan was entered by the bankruptcy court on June 3, 2017. *Id.* at 208 (Order Approving Trustee's Modification of Debtor's Plan After Confirmation). No objections were filed by Ms. Arkansas to the claims or the trustee's proposal for allowing the claims.

On February 27, 2017, before Plaintiff's Chapter 13 Plan was modified, Wells Fargo moved, as the servicing agent for Wilmington, to lift the bankruptcy stay. In its motion, Wells Fargo alleged that, when Ms. Arkansas filed for bankruptcy, it held a note executed by her in the amount of $63,750 with an interest rate of 8.697% per annum; that she had failed to make post-petition payments due under the note and was 15 payments in arrears as of February 15, 2017; and that the outstanding balance on the note owed to Wells Fargo was $57,119.08 in principal, plus interest, late

charges, post-petition fees, and attorney's fees. Ms. Arkansas responded to the motion to lift the stay on March 10, 2017. She denied that she was behind on her mortgage payments but maintained that she had insufficient information to admit or deny whether she had executed the note at issue, and, thus, asserted a "qualified denial." Defs.' App. 198-99.

By order dated April 26, 2017, the bankruptcy judge granted Wells Fargo's motion to lift the stay, noting that, while a response to the motion was filed by Ms. Arkansas, neither she nor her attorney appeared at the hearing on the motion. *Id*. at 201-02. Thereafter, the bankruptcy court entered an order on July 7, 2017, dismissing the Chapter 13 bankruptcy case without prejudice after being notified by the trustee that Ms. Arkansas had failed to timely pay the trustee one or more post-confirmation payments as required by the Confirmed Final Plan. *Id*. at 210. A few months later, Wilmington filed its Application for an Expedited Order Under Rule 736 to foreclose on the Property and submitted an affidavit by its servicing agent Wells Fargo. This in turn prompted Ms. Arkansas to initiate the separate state action that Defendants removed to federal court on June 8, 2018, and is pending before this court.

In their Motion to Dismiss, filed on April 30, 2019, Defendants contend that Plaintiff is taking an inconsistent position in this action than that previously taken by her in her bankruptcy case. Defendants argue that Plaintiff had an affirmative duty under the Bankruptcy Code to disclose all potential claims in her bankruptcy schedules, including the claims she now asserts regarding the validity of the Loan and the lien on her Property securing the Loan, but she failed to do so. Defendants, therefore, contend that Plaintiff's claims challenging the validity of the Loan and lien in this action are barred by judicial estoppel and res judicata, which can be determined based on the

pleadings in this case in conjunction with certain judicially noticeable facts.² In addition, Defendants contend that Plaintiff's tort claims are barred by the economic loss rule, that her fraud claim fails to satisfy Rule 9(b)'s pleading requirements, and that her negligent representation claim fails as a matter of law because the alleged representation was not made for guidance of her business.

Plaintiff's response to the Motion to Dismiss was initially due on May 21, 2019. *Eight days after that deadline expired*, Plaintiff moved for an extension of time to respond to the Motion to Dismiss, which was granted, and her response deadline was extended to June 10, 2019. Plaintiff, however, did not file her response to the Motion to Dismiss until June 25, 2019, *fifteen days after expiration of her extended response deadline*, or seek another extension to respond to the Motion to Dismiss.

Plaintiff disagrees that her claims are barred by judicial estoppel or res judicata. She contends that these and Defendants' other affirmative defense to her tort claims based on the economic loss rule are "without merit," but she does not explain why she believes that Defendants' economic loss argument is without merit; nor does she address this ground for dismissal anywhere else in her response. Pl.'s Resp. 8. She also fails to address Defendants' contentions that her fraud pleadings do not satisfy Rule 9(b), and her negligent misrepresentation claim fails as a matter of law because the alleged representation was not made for guidance in her business. Plaintiff, instead, simply notes, without elaborating, that it has come to her counsel's attention that she has "suffered severe emotional distress due to Defendants' efforts to foreclose on her home," and, she, therefore, seeks leave to amend her pleadings to add a new claim for intentional infliction of emotional distress

---

² It appears from Defendants' motion that the reference to Plaintiff's claims challenging the validity of the Loan and lien in this action includes all claims asserted and requests for relief sought by Plaintiff in this action.

**Memorandum Opinion and Order – Page 5**

("IIED"). *Id.* at 7. She also indicates, again without elaborating, that she would like to amend her pleadings to allege her fraud and negligent misrepresentation claims with more specificity.

Defendants oppose Plaintiff's request to amend her pleadings on the grounds that: (1) her motion for leave does not include a certificate of conference and does not attach a proposed amended pleading as required by this district's Local Civil Rules; and (2) the proposed amendment to add an IIED claim is futile because this tort claim, like Plaintiff's other tort claims, is barred by the economic loss rule. Defendants also contend that the court should not consider Plaintiff's untimely response to their Motion to Dismiss because it was filed without leave approximately two weeks after her extended response deadline. Additionally, Defendants continue to maintain that dismissal is appropriate based on their other defenses of judicial estoppel and res judicata.

## II.     Standard for Rule 12(b)(6) - Failure to State a Claim[3]

To defeat a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008); *Guidry v. American Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007). A claim meets the plausibility test "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

---

[3] Although Defendants have moved to dismiss all claims and requests for relief by Plaintiff under Rule 12(b)(6), their motion is more appropriately viewed as a motion for judgment on the pleadings, as they filed an answer to Plaintiff's Original Petition before removing the action to federal court and moving for dismissal. The same legal standard, however, applies to motions for judgment on the pleadings. *Waller v. Hanlon*, 922 F.3d 590, 599 (5th Cir. 2019) ("The standard for Rule 12(c) motions for judgment on the pleadings is identical to the standard for Rule 12(b)(6) motions to dismiss for failure to state a claim.") (citation omitted).

**Memorandum Opinion and Order – Page 6**

(internal citations omitted). While a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (citation omitted). The "[f]actual allegations of [a complaint] must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (quotation marks, citations, and footnote omitted). When the allegations of the pleading do not allow the court to infer more than the mere possibility of wrongdoing, they fall short of showing that the pleader is entitled to relief. *Iqbal*, 556 U.S. at 679.

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mutual Auto. Ins. Co.,* 509 F.3d 673, 675 (5th Cir. 2007); *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In ruling on such a motion, the court cannot look beyond the pleadings. *Id.*; *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). Likewise, "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims.'" *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). In this regard, a document that is part of the record but not referred to in a plaintiff's complaint *and* not attached to a motion to dismiss may not be considered by the court in ruling on a 12(b)(6) motion. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 820 & n.9 (5th Cir. 2012) (citation omitted). Further, it is well-established and "'clearly proper in deciding a 12(b)(6) motion [that a court may] take judicial

notice of matters of public record.'" *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (quoting *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) (citing *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994)).

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when it is viewed in the light most favorable to the plaintiff. *Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2002). While well-pleaded facts of a complaint are to be accepted as true, legal conclusions are not "entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679 (citation omitted). Further, a court is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions. *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted). The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has pleaded a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). Stated another way, when a court deals with a Rule 12(b)(6) motion, its task is to test the sufficiency of the allegations contained in the pleadings to determine whether they are adequate enough to state a claim upon which relief can be granted. *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977); *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir. 1996), *rev'd on other grounds*, 113 F.3d 1412 (5th Cir. 1997) (en banc). Accordingly, denial of a 12(b)(6) motion has no bearing on whether a plaintiff ultimately establishes the necessary proof to prevail on a claim that withstands a 12(b)(6) challenge. *Adams*, 556 F.2d at 293.

### III. Discussion

For the reasons that follow, Defendants are entitled to dismissal of Plaintiff's tort claims, as she waived or abandoned these claims. Dismissal, however, of Plaintiff's request for a declaratory

judgment regarding the validity of the Loan and corresponding lien on her Property is not appropriate based on Defendants' res judicata and judicial estoppel defenses.

    A.    **Plaintiff's Fraud and Negligent Misrepresentation Claims**

        1.    **Waiver or Abandonment of Tort Claims**

Local Civil Rule 7.1(e) applicable to motion practice provides: "A response and brief to an opposed motion must be filed within 21 days from the date the motion is filed." As noted, Plaintiff's response to the Motion to Dismiss was initially due on May 21, 2019. Instead of filing a response by this date or requesting an extension of this deadline, Plaintiff, who is represented by counsel, waited until May 29, 2019, *eight days after her response deadline*, before moving for an extension. As the requested extension was unopposed, the court granted it and extended Plaintiff's response deadline to June 10, 2019. Plaintiff, however, once again failed to file her response by this deadline, did not seek a further extension, and waited until June 25, 2019, *fifteen days after expiration of her extended response deadline*, before finally filing her response (Doc. 18) to Defendants' Motion to Dismiss. Plaintiff has not offered any explanation for her failure to respond timely to the Motion to Dismiss, and she did not seek leave to do so, even after Defendants raised the issue in their reply brief.

It is not incumbent on the court to give litigants repeated opportunities to prosecute and defend their claims, particularly when, as here, Plaintiff had two opportunities to respond in a timely fashion to the Motion to Dismiss. *See Reliance Ins. Co. v. Louisiana Land and Exploration Co.*, 110 F.3d 253, 258 (5th Cir. 1997) (noting that "[d]istrict judges have the power to control their dockets by refusing to give ineffective litigants a second chance to develop their case.") (citing *Turnage v. General Electric Co.*, 953 F.2d 206, 208-09 (5th Cir. 1992)). The court, therefore, **strikes** Plaintiff's

**Memorandum Opinion and Order – Page 9**

Response in Opposition to Defendants' Motion to Dismiss (Doc. 18) and Appendix in Support of Her Response (Docs. 18-1).

Even if the court does not strike Plaintiff's response to the Motion to Dismiss, dismissal of Plaintiff's tort claims is still be appropriate because her response fails to address Defendant's argument that these claims are barred by the economic loss rule. Her response also fails to address Defendants' contentions that her fraud pleadings do not satisfy Rule 9(b), and her negligent misrepresentation claim fails as a matter of law because the alleged representation was not made for guidance in her business. As noted, Plaintiff did not address any of these arguments in her response to the Motion to Dismiss. She, instead, simply contends in conclusory fashion that this and Defendant's other arguments are "without merit" and requests leave to amend her pleadings to: (1) add a new IIED claim; and (2) replead with more specificity her fraud and negligent misrepresentation claims.

Failure of a party to respond to arguments raised in a motion to dismiss constitutes waiver or abandonment of that issue at the district court level. *See Black v. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) (concluding that the plaintiff's failure to defend a claim in response to a motion to dismiss constituted abandonment" of the claim) (citation omitted); *Kellam v. Servs.,* No. 12-352, 2013 WL 12093753, at *3 (N.D. Tex. May 31, 2013) ("Generally, the failure to respond to arguments constitutes abandonment or waiver of the issue."), *aff'd sub nom., Kellam v. Metrocare Servs.*, 560 F. App'x 360 (5th Cir. 2014) (citations omitted). In wholly failing to address in her late response Defendants' grounds for dismissing her fraud and negligent misrepresentation claims, Plaintiff waived or abandoned these tort claims. Defendants are, therefore, entitled to dismissal with prejudice of these claims, and Plaintiff will not be allowed to replead them.

### 2. Request to File an Amended Complaint to Amend Existing Tort Claim Allegations and Add a New IIED Claim

As indicated, Plaintiff's response to the Motion to Dismiss includes a request for leave to amend her pleadings to add a new IIED claim and replead with more specificity her fraud and negligent misrepresentation claims. Granting Plaintiff's request to amend her pleadings would require modification of the court's scheduling order and revival of the November 18, 2018 deadline for amendment of pleadings that expired before Plaintiff filed her response to the Motion to Dismiss on June 25, 2019, that included her request for leave to amend her pleadings. Because the pleading amendment deadline has expired, Plaintiff must first show "good cause" for her failure to meet the scheduling order deadline under Rule 16(b) before the court can modify a scheduling order and permit the requested late joinder. *S & W Enters., L.L.C. v. Southwest Bank of Alabama*, 315 F.3d 533, 536 (5th Cir. 2003). A scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). The good cause standard requires the "party seeking relief to show that the deadlines [could not] reasonably [have been] met despite the diligence of the party needing the extension." *S & W Enters.*, 315 F.3d at 535 (citation omitted). "Only upon the movant's demonstration of good cause to modify the scheduling order will the more liberal standard of Rule 15(a) apply to the district court's decision to grant or deny leave." *Id*. at 536.

Plaintiff does not attempt to show good cause for the requested pleading amendments and does not even address Rule 16(b)'s requirements. Moreover, she fails to explain how she will cure the deficiencies noted in Defendants' Motion to Dismiss to satisfy Rule 9(b)'s heightened pleading standard. She also fails to explain how she will cure the fatal flaw in her negligent misrepresentation claim. As correctly noted by Defendants, Plaintiff does not allege that Defendants provided false information to her for guidance in her business, and there is no indication in any of the materials

filed in this action, the related actions filed by Plaintiff and Defendants, or the bankruptcy proceeding that Plaintiff is or was a business owner.[4] In addition, Plaintiff offers no factual details about her new IIED claim other than to state in conclusory fashion that she "suffered severe emotional distress due to Defendants' efforts to foreclose on her home." Pl.'s Resp. 7. Finally, while Plaintiff implies that the proposed amendments will address Defendants' argument regarding the economic loss rule, she does not elaborate.

For these reasons, and in light of Plaintiff's failure, without explanation, on two occasions to respond timely to Defendants' Motion to Dismiss, and her failure to address Defendants' arguments regarding her fraud and negligent misrepresentation claims, the court determines that she has not demonstrated good cause under Rule 16(b) for failing to meet the pleading amendment deadline, as she has not established that this deadline could not reasonably have been met despite the exercise of diligence. Additionally, although Plaintiff has not previously amended her complaint, the court further determines, for the same reasons, that allowing her to do so at this for purposes of adding a new IIED claim and amending her allegations regarding her existing fraud and negligent misrepresentation claims would only serve to unnecessarily delay the resolution of this litigation. The court, therefore, will deny Plaintiff's request for leave to amend her pleadings.

---

[4] To state a claim for negligent misrepresentation under Texas law, a plaintiff must set forth allegations from which the court can reasonably infer that:

> (1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies 'false information' for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation.

*Cunningham v. Tarski*, 365 S.W.3d 179, 186-87 (Tex. App.— Dallas 2012, pet. denied) (citing *McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787, 791 (Tex. 1999)).

**Memorandum Opinion and Order – Page 12**

### B. Defendants' Judicial Estoppel Defense

Judicial estoppel is an equitable doctrine, the purpose of which is "to protect the integrity of the judicial process by preventing parties from playing fast and loose with the courts to suit the exigencies of self interest." *Cox v. Richards*, 761 F. App'x 244, 246 (5th Cir. 2019) (citing *In re Superior Crewboats, Inc.*, 374 F.3d 330, 334 (5th Cir. 2004), and quoting *In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir. 1999)). "Judicial estoppel has three elements: (1) The party against whom it is sought has asserted a legal position that is plainly inconsistent with a prior position; (2) a court accepted the prior position; and (3) the party did not act inadvertently." *Allen v. C & H Distribs., L.L.C.*, 813 F.3d 566, 572 (5th Cir. 2015) (quoting *In re Flugence*, 738 F.3d 126, 129 (5th Cir. 2013)). The third element of judicial estoppel, inadvertence, is met when a party either "did not know of the inconsistent position or . . . had no motive to conceal it from the court." *Allen*, 813 F.3d at 573 (quoting *Jethroe v. Omnova Solutions, Inc.*, 412 F.3d 598, 601 (5th Cir. 2005)). A party does not know of an inconsistent position when he or she is not aware "of facts giving rise to [the] inconsistent position[]." *Allen*, 813 F.3d at 573 (quoting *Jethroe*, 412 F.3d at 601 n.4).

Defendants assert in their Motion to Dismiss that all three judicial estoppel elements are shown on the face of the pleadings in this case and judicially noticeable documents in the bankruptcy proceeding. Beyond this statement, however, Defendants, do not address the third element of their judicial estoppel defense in their Motion to Dismiss. The court also questions whether resolution of this defense is appropriate in the context of a motion to dismiss or motion for judgment on the pleadings because it is not clear from the pleadings or documents, of which the court may take judicial notice, when Plaintiff became aware of facts regarding her claim in this case that the Loan and lien on her property are invalid or unenforceable against her based on her allegations that she was the victim of identity theft and someone, other than her, executed the Loan documents. Thus,

while Plaintiff did not object to Wells Fargo's claims or the trustee's proposed treatment of those claims in the bankruptcy, the court cannot make a determination on whether the third element of judicial estoppel, inadvertence, is satisfied here, and neither party discusses whether an inadvertence determination based on motive to conceal is relevant in this case.

In their reply brief, Defendants contend that Plaintiff's "qualified denial" in response to Wells Fargo's motion to lift the stay in the bankruptcy case amounted to an inconsistent position to the one she is asserting in this case. This same denial appears to suggest that Plaintiff *may* have known at this time that she had a potential claim regarding the validity of the Loan and lien. Plaintiff also alleges in her pleadings that she "stopped making payments once she sought advice and realized her home had been paid off," Pl.'s Orig. Pet. 3, which suggests that she became aware of facts at some point in time that led her to believe the Loan and lien are invalid and unenforceable against her; however, she does not allege when she stopped making payments or when she sought advice, and she previously denied on March 10, 2017, that she was behind on her payments when she responded to Wells Fargo's motion to lift the bankruptcy stay. Consequently, these issues are better suited for resolution in the context of a summary judgment motion, as the court must accept as true Plaintiff's pleadings in ruling on the current Motion, and Plaintiff's "qualified denial" is outside the pleadings[5]

---

[5] Federal Rule of Evidence 201(b)(2) provides: "The court may judicially notice a fact *that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned*."); *see also Tu Nguyen v. Bank of Am., N.A.*, 728 F. App'x 387, 388 (5th Cir. 2 018) ("Because the proposed documents are *highly indisputable public records*, we take judicial notice of them."). Thus, the mere fact a document is a public record does not alone justify taking judicial notice of the document's contents unless the contents are highly indisputable. Applying this reasoning to the case at hand, the court may take judicial notice that Wells Fargo filed a motion to lift the stay in the bankruptcy proceeding on February 27, 2017, but it cannot take judicial notice of the facts alleged by Wells Fargo in that document, including Wells Fargo's allegation that Plaintiff executed the note at issue, because that fact is subject to dispute. Likewise, the court can take judicial notice that Plaintiff filed a response to Wells Fargo's motion on March 10, 2017. Normally, the court would not take judicial notice of the contents of such a response; however, Plaintiff does not object to the court taking judicial notice of the allegations in her response and, instead, relies on them, contending that she responded to Wells Fargo's allegations with a "qualified denial" because she had

and, in any event, does not establish that she had knowledge of facts supporting her current claim regarding the lien's validity. Having determined that Defendants have not satisfied the third element of their judicial estoppel defense, the court need not address the remaining two elements, as satisfaction of all elements is required to prevail on this affirmative defense. The court will, therefore, deny Defendants' Motion to Dismiss based on their judicial estoppel defense.

C. **Defendants' Res Judicata Defense**

Res judicata "precludes the parties or their privies from relitigating issues that were or could have been raised" in a prior proceeding that was decided on the merits. *Allen v. McCurry*, 449 U.S. 90, 94 (1980). For res judicata to apply, the party relying on the defense must establish that: "(1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded to a final judgment on the merits; and (4) the same claim or cause of action was involved in both suits." *Swate v. Hartwell*, 99 F.3d 1282, 1286 (5th Cir. 1996).

Defendants correctly note that a plan confirmation constitutes a final judgment for res judicata purposes. *In re Linn Energy, L.L.C.*, 927 F.3d 862, 866 (5th Cir. 2019) ("[T]he bankruptcy court's approval of the Plan and the ensuing confirmation order constitute a final judgment that may not be collaterally attacked.") (citing *Travelers Indemnity Co. v. Bailey*, 557 U.S. 137, 152 (2009)).

---

insufficient information at that time to admit or deny whether she had executed the note. *See* Defs.' App. 198-99. Even assuming, as Defendants contend, that Plaintiff's prior qualified denial is inconsistent with her position in this case regarding the validity of the Loan or note and lien, it still does not satisfy the requirement that she was also aware of the inconsistent position because she was aware of facts giving rise to the inconsistent position, that is, facts giving rise to her claim that the Loan and lien are invalid and unenforceable against her. *Allen*, 813 F.3d at 573 (quoting *Jethroe*, 412 F.3d at 601 n.4).

The court, however, is not convinced that the treatment and allowance of Wells Fargo's claim in Plaintiff's Chapter 13 bankruptcy case was a final judgment or adjudication on the validity of Wells Fargo's lien because no party sought a determination regarding the status or validity of the lien on Plaintiff's homestead in the bankruptcy case, and, while the plan as confirmed and modified provides for the allowance of Wells Fargo's claim, it does not address the validity of the lien that forms the basis of the claim. *See In re Simmons*, 765 F.2d 547, 557-59 (5th Cir. 1985) (acknowledging prior precedent regarding the res judicata effect of an order of confirmation as to all issues decided or that could have been decided at the confirmation hearing but concluding that the confirmed Chapter 13 plan or disallowance of the claim did not amount to a determination regarding the validity of the lien because no party had sought a determination regarding the lien validity); *see also In re Porter*, 382 B.R. 29, 38 (Bankr. D. Vt. 2008).[6]

Defendants argue that, with respect to "Plaintiff's challenges to the validity of the Loan, the 2014 Plan Confirmation Order is a final judgment for purposes of res judicata," and they cite *United States Aid Funds, Inc. v. Espinosa*, 130 S. Ct. 1367, 1376 (2010). Res judicata and the extent of the preclusive effect of the bankruptcy court's plan confirmation order was not at issue in this case;

---

[6] The court in *In re Porter* similarly reasoned that the res judicata bar of confirmed plans does not always apply to post-petition claims, because the confirmation process and adversary proceedings in bankruptcy cases have different purposes and, thus, do not always involve or resolve the same issues:

> A particularly "critical question for res judicata purposes is whether the party could or should have asserted the claim in the earlier proceeding." [*In re Layo*, 460 F.3d 289, 292 (2d Cir. 2006)] (quoting *In re Howe*, 913 F.2d 1138, 1146 n. 28 (5th Cir.1990)).The confirmation process revolves around the treatment of claims, and encompasses only those facts necessary to classify and value claims. It does not generally resolve specific substantive disputes [that] must be adjudicated in adversary proceedings. *See* [11 U.S.C.] § 1325; Fed. R. Bankr. P. 7001. Therefore, facts and issues considered in the confirmation process are almost always distinct from the facts and issues involved in a claim or cause of action a debtor wishes to pursue post-confirmation in an adversary proceeding. When that is the case, res judicata [does] not apply.

*Id.* at 38.

rather, the Court in this case merely stated that: "[t]he Bankruptcy Court's order confirming Espinosa's proposed plan was a final judgment, from which United did not appeal." *Id.* at 1376 (citation omitted). Accordingly, this case does not address the issue noted above whether the plan as confirmed and modified in the Chapter 13 bankruptcy case is res judicata as to Plaintiff's challenge in this action to the validity of the Loan and lien because it is a claim or issue she could have and should have asserted in the earlier bankruptcy proceeding.

Defendants also do not address the effect, if any, of Plaintiff's contention that she did not have sufficient knowledge regarding the validity of the lien during the bankruptcy proceeding, including when she asserted a "qualified denial" in response to Wells Fargo's motion to lift the stay, to dispute it. *See Lall v. Bank of New York Mellon as trustee to JPMorgan Chase Bank, N.A.*, 783 F. App'x 375, 379 (5th Cir. 2019) (citing *Hendrick v. Avent*, 891 F.2d 583, 586-87 (5th Cir. 1990)).[7] For these reasons, the court will deny Defendants' Motion to Dismiss based on their res judicata affirmative defense.

---

[7] *Lall* cited *Hendrick* for the following proposition:

> [R]es judicata barred collateral attacks because plaintiff "had the opportunity to effectively litigate his claim," even though he convincingly argued that 'he clearly did not know the whole story and serious representations were made[.]'); *see also In re Layo*, 460 F.3d 289, 292-93 (2d Cir. 2006) ("As a general rule, newly discovered evidence does not preclude the application of *res judicata*. Exceptions to this rule exist when the evidence was either fraudulently concealed or when it could not have been discovered with due diligence." *Saud v. Bank of New York*, 929 F.2d 916, 920 (2d Cir. 1991) (internal citation omitted). As the district court properly noted, checking the county records is the most basic type of due diligence. Inspection would have uncovered the history of discharged and undischarged mortgage liens on the property. That is, the facts that form the basis for the Trustee's challenge to the mortgages were available in the county clerk's office for anyone to see. The Trustee had clear opportunities to object to the validity of the mortgage lien listed in the confirmed Chapter 13 plan—when FNB filed its claim in the amount of $99,000 and when Layo consented to and included that claim in his final Chapter 13 plan.

*Lall*, 783 F. App'x at 379.

## IV. Conclusion

For the reasons explained, the court **strikes** Plaintiff's response to Defendants' Motion to Dismiss as untimely and filed without leave of court after the twice-extended deadline set by the court. Even considering Plaintiff's response, dismissal of her tort claims is appropriate because she waived or abandoned these claims by failing to address in her response Defendant's grounds for dismissing these claims. The court, therefore, **grants** Defendants' Motion to Dismiss (Doc. 10) and **dismisses with prejudice** Plaintiff's fraud and negligent misrepresentation claims. Plaintiff's request to amend her pleadings as to these tort claims and to add a new IIED claim is **denied** for failure to satisfy Rule 16(b). The Motion to Dismiss (Doc. 10), based on Defendants' affirmative defenses of res judicata and judicial estoppel, is **denied**. Accordingly, Plaintiff's claim for relief in the form of a declaratory judgment regarding the validity of the Loan and corresponding lien on her Property remains.

**It is so ordered** this 16th day of March, 2020.

_____
Sam A. Lindsay
United States District Judge